1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7   ASHLEY RICE, individually and as special
    Administrator of the estate of ROBERT
8   WENMAN,

Case No. 2:20-CV-1542 JCM (DJA)

ORDER

9                                    Plaintiff(s),

10        v.

11  CITY OF NORTH LAS VEGAS, et al.,

12                                   Defendant(s).

13

14        Presently before the court is defendants City of North Las Vegas ("CNLV") and CNLV

15  police officers Robert Jameson ("Jameson"), Skyler Lee ("Lee"), Jason Lawrence ("Lawrence"),

16  Barney Brucken ("Brucken"), Ann Taylor ("Taylor"), and Mark Suranowitz ("Suranowitz")

17  (collectively "defendants")' motion for summary judgment (ECF No. 42).  Plaintiff Ashley Rice

18  ("plaintiff"), individually and as special administrator of the estate of Robert Wenman

19  ("Wenman"), filed a response (ECF No. 48), to which defendants replied (ECF No. 61).

20

21        Also before the court is plaintiff's motion to strike portions of defendants' summary

22  judgment reply brief (ECF No. 65).  Defendants filed a response (ECF No. 70), to which plaintiff

23  replied (ECF No. 73).

24        Also before the court are multiple sets of motions for leave to file excess pages.

25

26  Defendants filed a motion for leave to file excess pages to their motion for summary judgment

27  (ECF No. 41), to which plaintiff did not respond.  Plaintiff filed a motion for leave to file excess

28  pages to her response in opposition to defendants' motion for summary judgment (ECF No. 47),

**James C. Mahan**
**U.S. District Judge**

to which defendants did not respond.  Finally, defendants filed a motion for leave to file excess pages to their reply brief (ECF No. 64).   Plaintiff filed a response (ECF No. 66), to which defendants replied (ECF No. 69).

## I.    Background

This action arises out of a fatal shooting incident that occurred on June 22, 2020, in North Las Vegas.  On that date, the City of North Las Vegas Police Department ("CNLVPD") received multiple phone calls about Wenman discharging a handgun at Craig Ranch Park.  (ECF No. 42-1 at 2-3).  One bystander advised 911 dispatch that Wenman told her "you need to get out of here" and "it's gonna [sic] get bad around here."  (*Id.* at 22).  The two 911 calls prompted dispatch to notify nearby officers of a code "434" or "illegal shooting."  (ECF No. 42-2 at 2).   Officer Teodoro Mendez  ("Mendez") responded first to the scene and immediately retreated to his vehicle and took cover after witnessing that Wenman was armed with a handgun.  (ECF No. 42-1 at 2, 17).  Wenman refused to comply with the order to drop his weapon.  (*Id.* at 2).

Officer Ashley Bertschy ("Bertschy"), a crisis negotiator, arrived on scene and took over communications with Wenman for the next four hours.  (*Id.* at 3).  Bertschy offered Wenman medical help, continuously provided explanations to Wenman regarding all officer movements, and provided Wenman with water and a cell phone, the latter of which he declined.  (*Id.* at 16, 29-30).  Bertschy also assured Wenman that he was not under arrest and that the arriving officers were there to help him.  (*Id.* at 27-29).

Due to Wenman's failure to cooperate with law enforcement, the City of North Las Vegas SWAT team responded to the scene using two Bearcat vehicles.  (*Id.* at 13).  Brucken, the SWAT commander, assigned SWAT snipers Jameson and Lee to the incident.  (ECF No. 42-4 at 18-19).   Upon arrival, Jameson received instructions from Taylor to set up position with Lee.

James C. Mahan
U.S. District Judge

- 2 -

1    (*Id.* at 18).  During this time, Taylor and Lawrence were in command of the two armored Bearcat

2    vehicles.  (ECF No. 42-1 at 41, 44).

3           During the four-hour standoff, the SWAT team devised a "less lethal plan" to use as a

4    last resort if Wenman did not surrender.  (ECF No. 42-6 at 13-16).  The plan involved deploying

5    a flashbang grenade as a distraction device to allow the officers to use less lethal ammunition and

6

7    the K-9 unit to approach and subdue Wenman.  (*Id.*).

8           According to Jameson, Wenman repeatedly raised his weapon in the direction of Bearcat

9    2.  (ECF No. 42-4 at 51-52).  Jameson testified that when Wenman fully extended his handgun in

10   the officers' direction, he determined that Wenman was placing the officers and general public in

11   imminent danger.  (*Id.* at 42-44).  Jameson fired a single round from his rifle at Wenman,

12   striking his left side and causing him to fall to the ground and drop his weapon.  (ECF No. 42-1

13   at 4).  Officers immediately moved to Wenman and attempted to administer lifesaving first aid

14

15   on him.  (*Id.*).  Wenman was transported to University Medical Center where he was later

16   pronounced dead.  (*Id.*).

17

18          Plaintiff, individually and as the administrator of Wenman's estate, now asserts six

19   causes of action against defendants under 42 U.S.C. § 1983: (1) unreasonable search and seizure

20   due to excessive force; (2) deprivation of familial relations in violation of the Fourteenth

21

22   Amendment; (3) failure to supervise; (4) a *Monell* claim for an unconstitutional custom, practice,

23   or policy; (5) a *Monell* claim for failure to train; and (6) a *Monell* claim for ratification.  (ECF

24   No. 19 at 15-37).  Additionally, plaintiff brings claims against defendants for battery and

25   negligence (*Id.* at 37-40).

26   . . .

27   . . .

28

James C. Mahan
U.S. District Judge

Defendants move for summary judgment on all of plaintiff's claims.  As explained *infra*, defendants have adequately pleaded a discretionary immunity defense against all eight of plaintiff's claims.  The court grants defendants' motion in its entirety.

## II.    Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id*.

In determining summary judgment, the court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id*.

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-

James C. Mahan
U.S. District Judge

moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

James C. Mahan
U.S. District Judge

- 5 -

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)) ("[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

**III.   Discussion**

A.  <u>Motions for leave to file excess pages</u>

As an initial matter, the court must first address the three sets of motions for leave to file excess pages (ECF Nos. 41, 47, and 64).

*i.   Defendants' initial motion for leave to file excess pages*

Defendants request leave to file their motion for summary judgment (ECF No. 42) that exceeds the thirty-page limit dictated by Local Rule 7-3.[1]  (ECF No. 41 at 2-3); see LR 7-3(a) ("[m]otions for summary judgment . . . are limited to 30 pages.").

Local Rule 7-3 states that motions for summary judgment shall not exceed thirty pages. LR 7-3(a).  The court has the authority to relax or modify this rule only upon a showing of good cause.  LR 7-3(c); *Veterinary Ventures, Inc. v. Farris*, No. 3:09-cv-00732-RCJ-VPC, 2010 WL 3070423, at *2 (D. Nev. Aug. 3, 2010) (citing *Gennock v. Warner-Lambert Co.*, 208 F. Supp. 2d 1156, 1158 (D. Nev. 2022)).

City defendants note that this is a fact-intensive matter involving sophisticated issues of constitutional magnitude.  Specifically, they explain that because dozens of police officers responded to the scene, provided recorded statements, and offered their body camera footage,

---

[1] Defendants mistakenly cite to Local Rule 7-4 in their motion.

they seek leave to file a motion for summary judgment thirty-four pages in length.  (ECF No. 41 at 3).  Additionally, defendants note that because this case involves an officer-involved shooting resulting a fatality, every single fact needs to be scrutinized.  (*Id.*).

The court agrees that the breadth of the issues and extensive factual nature of this matter warrant an exception to the general thirty-page limit.  Good cause appearing, the court grants defendants' motion for leave to file excess pages.  (ECF No. 41).

### ii.  Plaintiff's motion for leave to file excess pages

Plaintiff requests leave to file her response to defendants' motion for summary judgment (ECF No. 48) that exceeds the thirty-page limit dictated by Local Rule 7-3.  (ECF No. 47 at 2); *see* LR 7-3(a) ("responses to motions for summary judgment are limited to 30 pages.").

The court will not restate the applicable law, as the analysis is identical to that used in deciding defendants' motion for leave to file excess pages.  Plaintiff states that because the incident spanned more than four hours, involved seventy police officers, and discovery has been exhaustive, she seeks leave to file a response thirty-nine pages in length.  (ECF No. 47 at 2).

For the same reasons the court found good cause to grant defendants' motion, the court finds good cause to grant plaintiff's motion for leave to file excess pages.  (ECF No. 47).

### iii.  Defendants' motion for leave to file excess pages to reply brief

Finally, defendants seek leave of the court to file their reply brief (ECF No. 61) that exceeds the twenty-page limit dictated by Local Rule 7-3.  (ECF No. 64 at 2); *see* LR 7-3(a) ("[r]eplies in support of a motion for summary judgment are limited to 20 pages.").

Local Rule 7-3 states that a reply in support of a motion for summary judgment shall not exceed twenty pages.  LR 7-3(a).  The court has the authority to relax or modify this rule only

James C. Mahan
U.S. District Judge

- 7 -

upon a showing of good cause.  LR 7-3(c); *Veterinary Ventures, Inc.*, 2010 WL 3070423, at *2 (D. Nev. Aug. 3, 2010) (citing *Gennock*, 208 F. Supp. 2d at 1158 (D. Nev. 2022)).

Defendants cite the same arguments contained in their first motion for leave to file excess pages, arguing that good cause exists given the quantity of police officers, the number of recorded statements, and the fact that this was a fatal shooting.  (ECF No. 64 at 3).  Defendants now seek to file a reply in support of their motion for summary judgment twenty-four pages in length.  (*Id.* at 3).

Plaintiff opposes defendants' motion and also filed a motion to strike certain portions of defendants' reply, which the court will address accordingly.  Plaintiff presents two main arguments she believes are persuasive: (1) the reply brief contains new evidence and (2) the reply brief raises new arguments outside the scope of the original motion for summary judgment.  (ECF No. 66 at 5-7).  These two arguments are flawed, but it is more appropriate to address their respective deficiencies when ruling on plaintiff's motion to strike in the subsequent section of the court's order.

As it relates to the instant motion for leave to file excess pages, plaintiff completely ignores a key clause contained in Local Rule 7-3(c).  The court *has the authority to relax or modify this rule* only upon a showing of good cause.  L-R 7-3(c) (emphasis added).  The plain meaning of the rule grants the court ultimate discretion conditioned on defendants' showing good cause.

Defendants have shown good cause.  First, they seek to exceed the page limit by four pages only.  (ECF No. 64 at 3).  Second, plaintiff's belief that granting the motion would hinder judicial economy and fairness works against her.  (ECF No. 66 at 7-9).  It is in the interest of judicial economy to allow as much information as possible given the extremely factual nature of

James C. Mahan
U.S. District Judge

- 8 -

the case.  Similarly, raising an argument of fairness is questionable, as the court was fair to plaintiff in granting her motion for leave to file excess pages.  (ECF No. 47).  That motion requested to exceed the limit by nine pages, almost double the number of additional pages requested by defendants.  (*Id.* at 2).

Denying defendants' motion after granting plaintiff's motion would contravene judicial fairness and principles of equity.  Good cause appearing, the court grants defendants' motion for leave to file excess pages to their reply brief.  (ECF No. 64).

B.  Motion to strike

Plaintiff moves to strike portions of defendants' reply in support of their motion for summary judgment.  (ECF No. 65).  The court will deny plaintiff's motion to strike, as the reply neither contains new evidence nor raises arguments outside the scope of the underlying motion for summary judgment.

In her motion to strike, plaintiff asserts that three body camera videos and an expert rebuttal report attached as exhibits in the reply brief constitute new evidence that the court should disallow.  (ECF No. 65 at 7).  Plaintiff believes that the additional footage is not essential, and she cites a case decided by this court to buttress her argument.  The case cited by plaintiff is inapposite to the instant matter.  In that case, the issue concerned a judgment debtor filing a reply brief where the local rules did not allow such a filing.  *See F.D.I.C. v. Lewis*, No. 2:10-cv-00429-JCM-VCF, 2015 WL 4579323, at *2 (D. Nev. July 29, 2015).  Plaintiff further fails to explain why the footage is "new evidence."

The main purpose of a reply brief is to rebut the nonmovant's response.  *Vitale & Assocs., LLC v. Lowden*, No: 2:12-cv-01400-JAD-VCF, 2014 WL 1764715, at *4 (D. Nev. May 2, 2014); *see, e.g., Evans v. Encore Event Techs., Inc.*, No 2:15-cv-01120-GMN-CWH, 2017 WL

986357, at *1 n.1 (D. Nev. Mar. 14, 2017) ("[i]n a reply, a party may use evidence to rebut evidence presented in an opposition to a motion for summary judgment.").

The court will consider and allow the admission of defendants' exhibits in their reply, as defendants present these exhibits to rebut plaintiff's response.  Plaintiff herself states that defendants did not consider all the body camera footage available necessary to understand the totality of the circumstances.  (ECF No. 65 at 6-7).  Defendants are entitled to rebut the arguments in plaintiff's response.  Defendants' expert report also addressed the opinions expressed by plaintiff's expert witness.  (ECF No. 70 at 9).  Therefore, the exhibits in defendants' reply are within the scope of responding to plaintiff's opposition, and the court will deny plaintiff's motion to strike.  (ECF No. 65).

C.  Discretionary immunity

Defendants believe discretionary immunity affords them protection in relation to plaintiff's eight claims pleaded against them.  The court agrees.

Nevada has waived its general state immunity under Nevada Revised Statute § 41.031. The state's waiver of immunity is not absolute; the state has retained a "discretionary function" form of immunity for officials exercising policy-related or discretionary acts.  *See* Nev. Rev. Stat. § 41.032.[2]  Nevada adopted the Supreme Court's *Berkovitz-Gaubert* two-part test regarding discretionary immunity, meaning "Nevada's discretionary-function immunity statute mirrors the Federal Tort Claims Act."  *Martinez v. Maruszczak*, 168 P.3d 720, 727 (Nev. 2007).

Thus, public entities are immune from suit for discretionary functions, but can be held liable for operational functions.  *See id.* at 727 ("[d]ecisions made in the course of operating the

---

[2]  Title 12 of NRS states in relevant part that no action may be brought against a state officer or official which is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions . . . whether or not the discretion involved is abused."  Nev. Rev. Stat. § 41.032(2).

project or endeavor were deemed non-discretionary and, thus, not immune under the discretionary-function exception, as those decisions [are] viewed as merely operational."); *see also Andolino v. State*, 624 P.2d 7, 9 (Nev. 1981) ("[the state of Nevada] may be sued for operational acts, but maintains immunity for policy or discretionary ones").

Thus, state actors are entitled to discretionary-function immunity under NRS § 41.032 if their decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Martinez*, 168 P.3d at 729. "To come within the discretionary function exception, the challenged decision need not actually be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis." *Vickers v. United States*, 228 F.3d 944, 950–51 (9th Cir. 2000).

However, "federal courts applying the *Berkovitz-Gaubert* test must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *See Martinez,* 168 P.3d at 729 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)) (internal quotation marks omitted).

Here, plaintiff avers that discretionary immunity does not apply in this case, because it is not available where (1) constitutional violations occurred and (2) the decision is not based on considerations of social, economic, or political policy. (ECF No. 48 at 46).

Defendants are correct in contending that there is no evidence that they violated the constitution when interacting with Wenman. More important for the court's analysis is Jameson's decision to fire his weapon at Wenman and determining whether it involved a consideration of social, economic, or political factors. No reasonable jury could find that

Jameson and the rest of defendants abused their discretion in the four-hour incident at Craig Ranch Park.

The record is undisputed in presenting an abundance of factors that highlight defendants' choices based on social policy. Wenman constantly shifted positions while armed, thus forcing the police officers and SWAT team members to reposition in order to retain cover. (ECF No. 42-4 at 33). According to Jameson, Wenman repeatedly raised his weapon in the direction of Bearcat 2. (*Id.* at 51-52). Based on Wenman's movements, Jameson made the determination that Wenman was placing the officers and general public in imminent danger. (*Id.* at 42-44).

Given the totality of the circumstances preceding Jameson's decision to fire his weapon, his determination that it was necessary to do so was reasonable. Wenman refused repeatedly to put his gun down, designating him as a "no" person. (ECF No. 42-5 at 44).

Defendants' expert testified that "no" persons tend to place members of the public and officers in imminent danger, as they intentionally act adversely to officer presence and display active resistance to officer requests and demands. (*Id.*) The expert report offered by defendants states that "Mr. Wenman posed an immediate threat of serious physical harm to officers when he pointed his handgun in the direction of CAT2, which also included imminent threats to businesses, residents, and homes." (*Id.* at 28).

Finally, it is undisputed that Wenman already fired at least one round in the middle of Craig Ranch Park, and he told a witness "it's gonna [sic] get bad around here." (ECF No. 42-1 at 22). Plaintiff offers no persuasive evidence to dispute these facts. Accordingly, the court finds that discretionary immunity insulates defendants from all causes of action asserted against them.

. . .

. . .

James C. Mahan
U.S. District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 42) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion for leave to file excess pages (ECF No. 41) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for leave to file excess pages (ECF No. 47) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion for leave to file excess pages to their reply brief (ECF No. 64) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to strike portions of defendants' reply (ECF No. 65) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment and close the case.

DATED September 20, 2023.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 13 -